FRANK KELLY v. CITY OF CAPE GIRARDEAU, Appellant.—89 S. W. (2d) 41.

Division One, December 18, 1935.

104

*Frank A. Lowry* for appellant.

106

*Dearmont, Spradling & Dalton* and *Frank Kelly* for respondent.

PER CURIAM:—The Springfield Court of Appeals certified this cause to us for determination. It was the unanimous opinion of that court that its opinion was in conflict with an opinion of the St. Louis Court of Appeals in the case of Bird v. Railroad, 30 Mo. App. 365, and the Kansas City Court of Appeals in Steiglider v. Missouri Pacific Ry. Co., 38 Mo. App. 511.

The action is one for damages resulting from the overflow of respondent's property during heavy rains. The overflows are alleged to have been caused by the grading, curbing and guttering of the street in front of respondent's dwelling by the appellant, city of Cape Girardeau. In 1920 respondent obtained a judgment against appellant declaring the condition then existing to be a nuisance and ordering its abatement. There was no appeal. Soon thereafter an additional drain was constructed which did not materially change the conditions. Litigation between these parties arising out of successive overflows has resulted in three appeals to the St. Louis Court of Appeals and two to the Springfield Court of Appeals. One appeal to the St. Louis Court of Appeals was dismissed. The determination of each of the other four is reported. [Kelly v. Cape Girardeau, 260 S. W. 801; Kelly v. City of Cape Girardeau, 284 S. W. 521; Kelly v. Cape Girardeau, 227 Mo. App. 730; 60 S. W. (2d) 84; Kelly v. City of Cape Girardeau, 72 S. W. (2d) 880.]

On November 3, 1927, respondent filed suit against appellant in eleven counts for damages alleged to have resulted from overflows on July 27, 1923, August 8, 1923, August 17, 1923, August 21, 1923, April 21, 1924, June 12, 1924, two on June 23, 1924 (in separate counts) June 29, 1924, July 12, 1924, and December 7, 1924. The trial of this case resulted in a verdict for plaintiff for $10 actual and $5 punitive damages on each count. Judgment was entered accordingly. There was no appeal.

On April 2, 1931, respondent filed another suit against appellant in sixteen counts for damages arising out of sixteen overflows occurring at various dates between the 18th day of June, 1925, and the 28th of September, 1927. It will be noted that all of these overflows occurred prior to the filing of the former suit on November 3, 1927, but were on different dates and were not included in the November 3, 1927, suit. At the trial of the suit filed on April 2, 1931, appellant interposed the defense that the suit filed on November 3, 1927, was similar in all respects to the suit filed April 2, 1931, except as to dates and that since all of the damages alleged in the latter suit could have been included in the former, the former action should be a bar to the latter. The trial court overruled appellant's contention, and the case went to trial on all sixteen counts resulting in a verdict and judgment in favor of respondent on each count. On appeal to the Springfield Court of Appeals that court sustained appellant's plea in bar. Application to this court for certiorari was made. We denied the writ.

The suit now before us was filed June 3, 1932. The petition, in nine counts, seeks a recovery for damages from overflows alleged to have occurred on June 8, 1928, June 17, 1928, June 20, 1928, June 24, 1928, June 28, 1928, April 21, 1929, May 13, 1929, August 3, 1931, and August 27, 1931. The petition is practically identical with the petition in the April 2, 1931, suit except as to dates and number of counts. It will be observed that all but the last two of the dates mentioned in the present petition were prior to the date of the filing of the former suit on April 2, 1931. The case before us went to trial in Scott County before the opinion of the Springfield Court of Appeals in the April 2, 1931, suit was announced. In the present case, as in the former, the appellant raised the question that all but the last two counts were barred because they involved claims for damages which could and should have been included in the former suit and that the failure to include them then and to now sue on them amounted to a splitting of the cause of action existing on April 2, 1931. The trial court overruled appellant's contention and respondent again recovered on all counts. Appellant appealed. On appeal of the present case to the Springfield Court of Appeals that court reversed its former ruling, holding in effect that each overflow which resulted in damage to respondent created a separate and distinct cause of action and that therefore respondent did not split his cause of action existing on April 2, 1931, by not including therein all of the damages which had then accrued. [Kelly v. City of Cape Girardeau, 72 S. W. (2d) 880.] As stated above the Court of Appeals then certified this case to us for determination.

In the former opinion of the Springfield Court of Appeals (Kelly v. City of Cape Girardeau, 227 Mo. App. 730, 60 S. W. (2d) 84) that court said:

"The foundation of plaintiff's numerous suits is the failure of defendant to provide adequate drainage or outlets after diverting surface water into the street in front of plaintiff's property. It is and was one continuous tortious act, for which plaintiff was entitled to damages each time his property may have been overflowed by reason thereof and he had the right to maintain successive actions each and every time he was damaged thereby. [Shelley v. Ozark Pipe Line Co., 327 Mo. 238, 37 S. W. (2d) 518, l. c. 521, 75 A. L. R. 1316; Williams v. Kitchen, 40 Mo. App. 604.]

"Although it be true that plaintiff had the right to maintain separate and distinct actions for each occasion on which his property was overflowed and damaged by surface water diverted onto his property by defendant's failure to provide adequate sewerage, it does not follow that plaintiff may recover his damages by piecemeal. At the time the 1927 suit was filed all the damages sued for in the present suit had accrued, of which fact plaintiff had knowledge.

All the damages then accrued were the result of the same tortious act on the part of the city. The successive rains causing the damage were incident to the cause of action but not the basis of defendant's liability. In other words, plaintiff, at the time he filed suit in 1927, had one cause of action for all the damages that had accrued up to that time and had no right to split his cause of action. The nearest Missouri case we have found in point on that question is Steiglider v. Mo. Pac. Ry. Co., 38 Mo. App. 511. In that case the railroad company failed to maintain a lawful fence along its right of way as a result of which stock destroyed plaintiff's pasture. The petition was in two counts for damages in 1885 and 1887. It was claimed the first count for the damages arising in 1885 was barred by a prior suit. The Court of Appeals said:

" 'The evidence sustained the allegations of the petition and plaintiffs were entitled to recover, unless they were precluded, as to the first count, because, after they had knowledge of the damage done by animals to the crop in 1885, they instituted suit, and recovered judgment for the damages done to the crop in 1886, and did not include in said suit the damage previously sustained to the crop in 1885. The defendant contended, and the court held, that this was a complete bar to the matters complained of in the first count, and the correctness of this ruling is the sole question presented by this record.

" 'The books present a variety of decisions on the general question here suggested, which, although at times apparently inharmonious, yet agree on the principle, fundamental, in all such controversies, "that one shall not be twice vexed for one and the same cause," that there shall be but one suit for one cause of action. The policy of the rule is manifest. It protects the defendant from a multiplication of suits by a vexatious litigant, and avoids obstructing the courts with a cloud of petty cases supported by the same facts, and involving the same legal questions. It is well understood, then, that one cause of action cannot be split up into several. The plaintiff must bring his whole complaint into court in one suit at one time, that the cause of action then existing may be entirely considered and forever settled, that there may be an end to litigation. It is not meant by this rule that the plaintiff must join in one action every demand, which, under the rules of law, he might join, but it is only meant that, when he has but one cause of action, he shall have but the one chance to litigate. He cannot sue for a portion now, and a portion at some other time. He cannot, in an action for a wrong committed by the defendant, sue for, and recover, a portion of the damages resulting therefrom, and, then, at some future time, be permitted to complain of the same wrong, and recover other items of damage existing and known to such plaintiff at the institution of the former action. "There can be but one recovery for an injury

from a single wrong, however numerous the items of damage may be.'' [Perry v. Dickerson, 85 N. Y. 347, 39 Am. Rep. 663; Union Railroad & T. Co. v. Traube, 59 Mo. 362, 363.] As said by the court in Laine v. Francis, 15 Mo. App. 110: ''The general rule, therefore, is that, if a party, having a cause of action which he may litigate and conclude in one suit, divide it, and sue and recover in respect of a part of it, this judgment concludes him as to the whole, and he cannot, therefore, sue as to the ramainder.'' [See, also, Trask v. Railroad, 2 Allen, 332-3; Freeman on Judgments, secs. 240 and 241.]' Steiglider v. Mo. Pacific Ry. Co., 38 Mo. App. 1. c. 514.

. . .

''We therefore hold that when plaintiff brought suit for a part only of his claims for damages which had accrued in 1927, when the last former suit was filed, he is barred from claiming damages for overflows to his property which had occurred prior to the date said former suit was filed. . . . The idea of harassing a defendant by splitting a cause of action has ever been condemned in this State. Plaintiff having seen proper to sue for only a part of the damages that had accrued from a single tort, is barred, we think, from recovery for damages which he voluntarily renounced or omitted from his former suit.''

We think the Court of Appeals reached the correct result in the opinion quoted.

In determining whether a cause of action for damages resulting from a continuous nuisance has been split it should be recognized that such a cause of action consists of a primary right and corresponding duty coupled with an actual injury. Absent either it cannot be said to exist. [1 C. J., sec. 28, p. 935; McKee v. Dodd, 93 Pac. 854, 1. c. 855; Parris v. Atlanta, K. & N. Ry. Co., 57 S. W. 692, 694; 1 Ency. of Pleading & Practice, p. 116.]. When that rule is applied to the facts before us it is apparent that the overflows alone did not constitute separate and unrelated causes of action for damages. It was necessary that each injury be coupled with both the right of respondent to enjoy the use of his property without hindrance or injury from overflows and the violation of that right by the creation by the appellant of a condition which made injury to respondent possible or imminent. If that premise be correct, and we think it is, then successive injuries must be said to be connected one to the other by a common tie which tie is the primary right and the primary wrong common to each and all injuries. It has been said that the separate injuries are merged into one cause of action. In the sense that all which have occurred should be joined in one action, that is true, but when the action is one to recover for each specific injury as such, the better rule of pleading seems to be that all should not be joined in a single count. It does not necessarily follow that all damages resulting from a continuing nuisance must be

joined in a single suit. Such a rule would require the injured party to defer bringing his action until a time when all injuries from the violation of the primary right had ceased, which might never happen. The right has always existed to bring an action to recover damages resulting from injuries which have occurred since the date of the filing of the last preceding action. [Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S. W. (2d) 518.]

Neither should the above rule be confused with the use of the term ''cause of action'' which is applied in determining whether the right of action has been barred by limitation. The rule is well settled that the Statute of Limitations runs against each injury separately and commences to run from the date of the injury. [Limitation of Action, sec. 249; 37 C. J., p. 883.]

Respondent relies upon the case of Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S. W. (2d) 518, as supporting his position that each overflow created distinct, separate and unrelated causes of action. He quotes from that opinion as follows:

''The principle upon which a party creating a continuing nuisance is held liable to successive actions for damages is that he had a legal right and is under legal obligation to remove, change or repair the structure or thing complained of, and thereby terminate the injury to his neighbor; and, failing so to do, each day's continuance of the nuisance is a repetition of the original wrong, and a new action will lie therefor.'' (l. c. 246.)

We see no conflict between this statement and the rule above stated.

The rule announced herein is not of recent origin. This court said in Union Railroad & Transportation Co. v. Traube, 59 Mo. 355, l. c. 362:

''And even where several claims, payable at different times, arise out of the same contract or transaction, separate actions may be brought as each liability accrues—but in this case it has been held, that if no action is brought until more than one is due, all that are due must be included in one action; and if an action is brought when more than one is due, a recovery in that suit will be a bar to a second action brought to recover the other claims that were due when the first was brought. [Reformed Dutch Church v. Brown, 54 Barb. 191.]''

The term ''cause of action'' is used in reported cases with many different meanings where different considerations are involved. When the meaning we give the term ''cause of action'' is applied to reported cases involving the same question herein involved we find no conflict of reasoning. Since it is conceded that the first seven counts of respondent's petition were for damages resulting from overflows which occurred prior to the date of the filing of the former suit on April 2, 1931, those seven counts are barred in this action.

At the trial the court permitted respondent to amend his petition by interlineation by adding the words "and for failure to comply with the order and judgment of the court" in each count of the petition. The amendment resulted in the latter part of each count reading as follows: ". . . All to his actual damages in the sum of $200 (and for failure to comply with the order and judgment of the court) and for wantonly refusing to abate such condition, the plaintiff is entitled to $500.00 as punitive damages." Appellant contends that this amendment "so changed the cause of action that punitive damages were recoverable under the petition as amended and were not recoverable under the petition prior to such amendment and, therefore should not have been permitted after the jury had been sworn and the parties announced ready for trial and opening statements made." The Court of Appeals ruled this point correctly when it said: "It is our opinion the amendment did not change the cause of action but was in harmony with the prayer for punitive damages and was a matter lying within the sound discretion of the trial court" citing Montague v. Mo. & Kan. Int. Ry. Co., 289 Mo. 288, 233 S. W. 189. [Also, see, 48 C. J., sec. 460, p. 808.]

Appellant contends that the petition fails to state facts sufficient to constitute a cause of action. In other actions between these parties this petition in substantially its present form has been before the appellate courts of this State several times. It was digested in the case of Kelly v. City of Cape Girardeau, 284 S. W. 521, and referred to at some length in the cases of Kelly v. City of Cape Girardeau, 260 S. W. 801, and Kelly v. City of Cape Girardeau, 227 Mo. App. 730, 60 S. W. (2d) 84, therefore it need not be set out here. The petition contains all of the usual and necessary allegations in a suit of this character.

Appellant further contends that the trial court erred in not confining respondent's witnesses to testimony concerning floods on the specific dates mentioned in the petition. We agree with what the Court of Appeals said in passing on this point:

"Particular attention is called to the testimony of one Martin Niedling on this point. An examination of the record shows that this witness was asked if he remembered the general conditions there in times of heavy rains between the 8th day of June, 1928, and August 27, 1931. These dates were the dates set forth in the petition. The witness testified as to general conditions following heavy rains between those dates and was therefore reasonably within the allegations of the petition. We find no error in this respect."

Appellant next insists that absent testimony of willful and malicious conduct its demurrer to the evidence as to punitive damages should have been sustained and respondent's instruction authorizing punitive damages refused. We find no merit in this contention.

The same question was involved in the case of Lampert v. Drug Co., 238 Mo. 409, 141 S. W. 1095. We held in that case that there are two kinds of malice—malice in fact and malice in law—that malice in law justified exemplary damages and meant the intentional doing of a wrongful act without just cause or excuse. In the present case the petition alleges and the proof shows the intentional creation of a condition by appellant which by final judgment was declared to be a nuisance, and the intentional continuance of that nuisance to respondent's injury without legal justification.

In the Court of Appeals appellant objected to the action of the trial court in admitting the pleading and verdicts in former cases between the same parties for similar damages to the same premises involved in the present case. Since no reference is made to that point in the brief filed in this court we assume it was intentionally abandoned and will so treat it.

Appellant complains of the action of the court in refusing to give instructions A, B and E offered by appellant. Instruction A is a peremptory instruction for defendant. Instruction B told the jury there could be no recovery for punitive damages. It follows from what has heretofore been said that both instructions A and B were properly refused. Instruction E is as follows:

"The court instructs the jury that a city is under no legal obligation to build storm water sewers to take care of the surface waters falling within its territory, and if you find and believe from the evidence herein that defendant has not built storm water sewers in certain parts of its territory you shall not, on this account, find the city liable in this matter."

Under the pleadings and facts in this case this instruction must be characterized as declaring an abstract proposition of law. It would have been improper to tell the jury that although the condition created by appellant was unlawful and resulted in damage to respondent yet respondent could not recover because appellant was under no legal obligation to do one of the things which might have abated the nuisance yet that would have been substantially the result of giving this instruction.

The verdict of the jury was for $20 actual and $135 punitive damages on each of the nine counts of the petition, a total of $1395. Appellant thinks that was excessive. The Court of Appeals determined that it was excessive and directed a *remittitur* of $300. Under all the facts in this case it is not apparent that the verdict on the two counts now remaining are so large that they should not stand.

Other points raised by appellant in the Court of Appeals but not referred to in its briefs here are considered abandoned.

For the reasons herein stated the cause is reversed and remanded with directions to the trial court to enter judgment for appellant on counts one to seven inclusive, and for respondent on counts eight and nine in accordance with the verdict of the jury.